## San Patricio County v. John McClane.

1. PROCLAMATION BY THE GOVERNOR.—Such proclamation attaching a county to another county for judicial purposes (under art. 12, sec. 24 of the Const.) is conclusive upon the courts. They cannot inquire into the causes or information upon which the Governor acted.

2. CONFEDERATE MONEY CONTRACTS.—Where suit is brought upon a contract for labor done, payable in Confederate notes, a plea setting up such fact is good to the extent of inquiring into the actual value of the labor performed, which actual value may be recovered.

3. CLAIMS AGAINST COUNTIES.—The act of 21st July, 1870, (Paschal's Dig., 6040,) providing for the payment of the outstanding indebtedness of the several counties, requires all such claims to be registered and numbered, and prohibiting payment, except in the order of number and date of presentation for registration; and in a suit upon a claim not so presented for registration that fact may be pleaded.

4. SAME.—The County Courts cannot, without special authority, issue commercial paper so as to charge the county or deprive the county of any defense it might have against the original creditor, and the holder of an ordinary draft upon the county treasurer would only

take the claim against the county, of which the draft would be evidence and subject to every defense which existed against the original holder of such claim.

APPEAL from Nueces.    Tried below before the Hon. T. C. Barden.

John McClane brought suit April 13, 1872, in the District Court of Nueces county, against the county of Refugio, upon eighteen county warrants for one hundred dollars each, seven bearing date August 30, 1861, of which the following is a copy:

" No. 1.   $100.   Treasurer of San Patricio county will pay to Alexander Murphy, or order, the sum of one hundred dollars, ($100,) with 12 per cent. interest per annum from date until paid, the same being on account of the contract for building the court house and jail in said county.

"Witness my hand and seal of County Court of said [L. S.] county, at San Patricio, this 30th of August, A. D. 1861.

"Attest : A. McGLOIN,                 OWEN GAFFNEY,
    Cl'k C. C., S. P. Co.              Chief Justice."

The other eleven were of date May 21, 1862, and copy of one is as follows :

" No. 13.   $100.   The Treasurer of San Patricio county will pay to Alexander Murphy, or order, the sum of one hundred dollars, part payment on balance due him on court house and jail, as per last settlement with the County Court, with 12 per cent. per annum interest until paid.

" Witness my hand and seal of County Court, at San [L. S.] Patricio, May 21, A. D. 1862.

"Attest : A. McGLOIN,                 OWEN GAFFNEY,
    Cl'k C. C., S. P. Co.              Chief Justice."

It was alleged that these county warrants were indorsed by Murphy to petitioner, who was owner and holder, &c. ; that the officers issuing the same were authorized to do so by action of the County Court of San Patricio county ; that

the county treasurer will not pay the warrants, nor will the County Court order payment, &c.

The defendant pleaded in abatement that the suit was not brought in San Patricio county. The action of the court is shown by the bill of exceptions, as follows:

" Be it remembered, that this cause coming on to be heard upon the defendant's plea to the jurisdiction of the court, which said plea was verified by facts and admission of plaintiff's petition, filed as part of the record in said cause, and the judge having stated from the bench that he had certified by telegraph to the Governor of the State of Texas, before the filing of this suit, that from the want of a proper place for holding court and for the sheriff and clerk of said San Patricio county, and also for the want of the requisite number of qualified jurors, the court could not be properly held in said county, and that he had a certified copy of the Governor's proclamation issued thereon; and thereupon the court overruled the said plea, to which ruling of the court the defendants excepted, for the reason that the certificate of the judge was not made in the terms of the law, and that the said proclamation was of no force and effect on account of said defect in said certificate, and now here tender this their first bill, and ask that it be signed and certified as a part of the record in this cause, which is accordingly done.

" The above bill of exceptions is signed, with the addition that any statement from the bench was to this effect: that I had, as required by the Constitution of the State, duly certified in writing to his excellency the Governor the existence of the facts set forth above relating to San Patricio county, whereupon in the first instance the proclamation duly issued attaching San Patricio county to Nueces county for judicial purposes; that subsequently, viz, November 25, 1871, was passed the act amending act fixing the times for holding the terms of court in the 16th judicial district; but that, about the 20th February, 1872,

I telegraphed the Governor, stating the same circumstances still existed in San Patricio county as formerly, and asking that his excellency's proclamation re-issue, re-attaching the county of San Patricio to Nueces county as was before done.

"The proclamation was re-issued.

"In addition to what is stated above I further stated that I might have communicated the same facts in regard to San Patricio again in writing as in the first instance. As to this I did not recollect definite. The telegram was sent and the proclamation re-issued prior to the filing of above suit in District Court, Nueces county.

"T. C. BARDEN,<br>
*Judge* 16*th Judicial Dist. Texas.*

The defendant further answered that the said warrants, issued in 1862, were issued under a settlement made with Murphy rescinding his contract to build a court house, &c., which settlement was in aid of the rebellion, and the amount allowed was payable in Confederate money.

The several described warrants were by amendment made part of petition, and plaintiff alleged that he was an innocent holder for value and in due course of trade.

The court charged the jury—

"If from the evidence you believe the County Court of Refugio county executed the warrants set out in plaintiff's petition, and that the same subsequently came into the possession of the plaintiff, as an innocent holder, in the ordinary course of business, and that the same have not been paid, as alleged by plaintiff, you will find for plaintiff the amount due upon said warrants."

Verdict and judgment for the amount sued for. The county has brought the case by writ of error to this court.

*J. C. Russell,* for plaintiff in error.

No counsel for defendant in error.

IRELAND, ASSOCIATE JUSTICE.—The plea of privilege to be

sued in San Patricio county does not appear to have been well taken. If the Governor, in fact, issued the proclamation attaching San Patricio to Nueces county for judicial purposes, the court could not inquire into the fact as to how the Governor obtained the information upon which he acted. The Constitution confers the power, and his action is conclusive upon the courts. (Constitution, art. 12, sec. 24.)

The defendant plead many matters in defense, one of which was that the contract between Murphy, the original payee of the debt sued on, and San Patricio county was that the debt was to be paid in Confederate money, and that the contract was therefore void, and we are referred to the decisions of our predecessors to sustain this position.

The position of the late incumbents of this bench was that Confederate-money contracts were virtually in aid of what they termed the "rebellion," and therefore void. This view of the law was originally supposed to be in harmony with the views of those public servants controlling the affairs of the United States. Such, however, is not the view taken of these contracts by the judiciary department of that Government, and we have too much respect for that distinguished tribunal to differ with it on this question, and we adopt what we understand to be the rule of that court in preference to that of our predecessors, and hold that such contracts are not void, but that under a proper state of pleading and proof the party may recover the real consideration for the contract, or what the work for which such obligation may have been given was actually worth. To this extent the defendant's plea of Confederate money is a good plea, but not to the extent of rendering the contract void.

The defendant set up by way of exceptions the fact that the claims sued on had never been presented to the treasurer of San Patricio county for registration, and that they were not in fact registered and numbered, as required by the 4th section of the act of 1870, on the subject of county

liabilities. (Paschal's Dig., art. 6044.) That act was then in full force, and it will be seen that it prohibits the county treasurer from paying any claim against a county except according to number and seniority of presentation. This being a prerequisite to payment, the holder could not lawfully demand payment without complying with the law, nor is it believed that he could maintain a suit without such registration; and in overruling defendant's plea setting up this fact there was error. This will require a reversal of the judgment; but as the case will go back, and there may be further litigation with reference to the demands sued on, it is proper that we should notice another point in the case.

The plaintiff set up the fact that he was an innocent holder of the claims for a valuable consideration without notice.

The court below charged the jury that if the claims came into the hands of the plaintiff in the ordinary course of business as an innocent holder, and that they had not been paid, they would find for the plaintiff. This would indicate that the court treated the certificates of indebtedness or orders on the county treasurer as commercial, negotiable paper. It is true that a transfer of such paper would be treated in equity as a transfer of the debt of which the orders were evidences, but these orders are not, in any proper view, commercial paper, transferable by delivery, or such paper as would prevent the debtor from setting up any defense he might have against the original holder or creditor. The papers sued upon were simply directions to the treasurer to pay the amount of money called for, and could be used in evidence against the county in case it denied the indebtedness.

County courts cannot, without special authority, issue commercial paper so as to charge the county, or deprive the county of any defense it might have against the original creditor.

It is certainly the duty of the defendant to make provision to pay and to discharge its indebtedness, and because of the difficulties in the way of the citizen in compelling payment to be the more prompt; and should the county fail to do this, upon the amount due being ascertained, the plaintiff is not without a remedy.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.