CLARKE & COURTS v. SAN JACINTO COUNTY ET AL.

Delivered February 4, 1898.

**1. Mandamus and Injunction—Commissioners Court—Pleading.**

If the district court is authorized to interfere by writ of mandamus or injunction with the action of the commissioners court in subdividing the county funds into the classes prescribed by article 857, Revised Statutes, the petition therefor should set out the action complained of and the objections urged to it, with appropriate prayer for writs so framed as to correct it.

**2. Same—Funding County Indebtedness.**

The funding of county indebtedness rests within the discretion of the commissioners court, and can not be controlled by the writ of injunction or mandamus.

**3. Counties—Classification of Funds.**

The power given the commissioners court by article 858, Revised Statutes, to create other classes of funds than the three classes prescribed in article 857, can not be so used as to destroy the rights of holders of registered claims to have them paid out of the appropriate fund in the order of their registration.

**4. Same—Payment of Warrants—Judgment Against County.**

A holder of county warrants is entitled to judgment thereon against the county where they have not been paid because of the action of the commissioners court in subdividing the class of funds to which they belong into yet other classes in such manner as to defeat their payment of the warrants in the order of their registration.

ERROR from San Jacinto. Tried below before Hon. L. B. HIGH-TOWER.

*Hill & Hill,* for plaintiffs in error.

No brief for defendant in error reached the Reporter.

WILLIAMS, ASSOCIATE JUSTICE.—This was an action by plaintiffs in error against San Jacinto County and against the county judge, county commissioners, and county treasurer, in which plaintiffs sought judgment against the county for the amount due on certain warrants for the price of stationery furnished the county, which had been duly issued to them upon the county treasurer, and prayed for injunction and mandamus against the other defendants. The petition alleged demand upon the county and refusal to pay. It further alleged that the warrants had, when issued, been presented to the treasurer for registration, and had been registered and numbered by him as of class number 1 of claims against the county, when they in fact belonged to and should have been registered in class number 3; that "the third class fund of the county that should have been applied to the payment of these warrants had been by the Commissioners Court of the county divided to other funds willfully, wrongfully, intentionally, and with the express purpose of postponing and defeating plaintiffs in the collection of said indebtedness and payment of same in due course of law."

The petition further alleged that plaintiffs had also demanded of the Commissioners Court that, in case it would not pay said warrants, it fund the indebtedness of the county and levy a tax to pay the same, or provide therefor, all of which that court had refused to do. The prayer was as follows:

"That on the trial hereof plaintiffs have judgment against San Jacinto County for plaintiffs' said respective demands, interest, and costs of suit. That by decree of this court a writ of mandamus issue to each member of said Commissioners Court and their successors in office requiring them as a court and as members of said court to levy a tax as required by law to pay the third class indebtedness of San Jacinto County. And that plaintiffs' respective demands be paid out of said third class funds according to their respective proper registered numbers as found by this court, and respective amount of plaintiffs' said warrants herein described as if they had been properly registered as of the third class instead of the first class according to the respective dates when they were erroneously registered as aforesaid. That by decree of this court the said county treasurer of San Jacinto County, defendant herein, and his suc-

cessors in office be required by mandamus to register each warrant here-sued on as of the third class by such numbers as each warrant should have been numbered on the day each was registered respectively, and that the same be shown by decree of this court. That said treasurer be required by mandamus to pay plaintiffs the amount of each of said warrants according to their proper register numbers as found and ascertained by decree of this court. That all third class funds of San Jacinto County as required by statute be set aside by said treasurer and said Commissioners Court for this purpose.

"That by decree, said Commissioners Court and each member thereof be enjoined from diverting the funds of the third class of San Jacinto County to any other fund until plaintiffs' said demands are paid. That by decree of this court the Commissioners' Court aforesaid and each member thereof be by mandamus required to fund the indebtedness of San Jacinto County and provide for the payment of the same as required by statute.

"Plaintiffs pray for such other further and general relief as they may be entitled to receive."

The defendants' fourth, fifth, sixth, and seventh special exceptions to the original petition were sustained, and while a trial amendment was filed, the substance of its allegations, so far as they affected the points raised by such exceptions, is reflected in the foregoing statement. The exceptions sustained were as follows:

"4. Said petition is insufficient in law wherein it seeks by mandamus to compel the County Commissioners Court to fund the debts of the county or any part thereof.

"5. Said petition is insufficient in law wherein it seeks by mandamus to compel the County Commissioners Court to place any specific amount of the county revenue in the third class fund of the county.

"6. Said petition is insufficient in law wherein plaintiff seeks a judgment against the county of San Jacinto. Said petition totally fails to show any demand against said county, and shows that if said county was ever indebted to plaintiffs, said debt was fully satisfied by warrants of said county being drawn on the treasurer of said county and delivered to and accepted by plaintiffs.

"7. Said petition is insufficient in law wherein it seeks to enjoin the County Commissioners Court of San Jacinto County, said petition failing to allege any matter that would entitle plaintiff to such relief."

The warrants sued on were issued during the years 1890, 1891, 1892, and 1893, to be paid out of general fund, for stationery. They were registered by the treasurer as of class number 1 of claims against the county. It appeared from the evidence that, before these warrants were issued, the general fund of the county, which is classed by the statute as number 3, was divided by the Commissioners Court into six special classes, and the tax, levied to raise money to constitute the general fund, was divided into six corresponding classes. The whole levy for general purposes amounted to 32 cents on the $100 of taxable values, and of this,.

2 cents on the $100 were levied to pay such claims as those of plaintiffs, and this constituted class number 1 according to the division thus made. The consequence was that enough money was never raised to pay such claims, some of which, issued to other parties as early as 1888, were still outstanding. It was further shown that by this division a special fund, called the printing fund, was provided out of what would otherwise have constituted the general fund, and that out of this there were paid claims for printing, as they accrued, of later date than those of plaintiffs'. It is shown to be uncertain when, if ever, the 2-cent levy will raise enough money to pay plaintiffs' claims. At the August term, 1895, of the Commissioners Court, plaintiffs presented a petition setting up their claims based upon the warrants, and representing "that under present rate of taxes levied, collected, and paid into the fund it is registered against it will be several years before it can be paid off, if ever paid; that the scrip was issued to plaintiffs in payment of stationery purchased by the county officers of defendant county, long since due, and plaintiffs desire to collect the same. Prayer that the court pass an order directing the treasurer to pay the scrip if sufficient money on hand, and if he have no money by which the scrip can be paid, then that a higher tax be levied in favor of the fund (first class) against which the scrip is registered; or that the court classify the funds of said county as the statute provides, and register all county scrip in the proper fund as the statute requires, and require the treasurer to pay scrip according to its registered numbers in each fund so made. When funds are created as law requires, then classify all outstanding county warrants, and register same in proper fund according to the date of issuance of issue numbers." The petition was by order of the court continued until the February term, 1896. The same matter in substance had been orally presented to the court at the May term, 1895, and been continued to the August term. At the trial below the court granted plaintiffs' prayer, requiring the treasurer to register the scrip in class number 3, instead of class number 1, and that the numbering of it correspondingly changed, but denied plaintiffs all other relief, and discharged the county and the other defendants with their costs. We are of the opinion that the judgment is correct in so far as it denied the writs prayed for and awarded costs to the judge, commissioners, and treasurer. The latter is not the officer who originally registered the scrip, and he is not shown to have done anything whatever to render him personally liable to suit. We do not think the petition showed any sufficient facts to authorize the court to issue the writs of mandamus and injunction prayed for. If the court by either of those writs could interfere with the action which had been taken by the division of the funds, that action and the objections urged to it were not set up in the petition with appropriate prayers for writs so framed as to correct it. This, we think, was essential in a proceeding for either mandamus or injunction. Cullum v. Latimer, 4 Texas, 329; Arberry v. Beavers, 6 Texas, 457; Railway v. Jarvis, 80 Texas, 456.

The mere allegation that the officers had diverted money from one

fund to another was entirely too vague to lay the basis for the issuance of an injunction. The funding of the indebtedness of the county is not an act the performance of which could be required by either writ, as it rests entirely within the discretion of the Commissioners Court. The court, however, erred, we think, in refusing to give judgment against the county. It is true that the mere fact that the plaintiffs held the claims against the county would not warrant suit, as it would against an ordinary debtor, but the allegations and proof must show that their rights had, in some way equivalent to a refusal to audit or pay the claims, been infringed. The allowance of the claims and issuance of the warrants was an auditing of them, and under the statute (Revised Statutes, article 790) the county was protected from suit until such facts as those supposed arose. But plaintiffs were entitled not only to have their claims audited and allowed, but to have them paid, whenever, by following the provisions of law intended to provide means for their payment, funds were, or should have been, received sufficient for that purpose.

It is provided by article 852, Revised Statutes, that claims against the ·county shall be registered in three classes, specifying the kind that are to belong to each class. The claims of appellants belong to the third class, or general indebtedness. By articles 853, 854, and 855, registration of claims according to class in the order of their presentation is provided for, and article 856 provides, that "the treasurer shall pay off the claims in each class in the order in which they are registered."

Article 857 provides, that all of the funds received by the treasurer, ·"shall be classed as follows," and then gives three classes, corresponding with the three classes of claims before indicated, and requires that the funds of each class shall be appropriated to the payment of claims of the corresponding class. Articles 858 and 859 are as follows:

"858. The commissioners court shall have power to cause such other accounts to be kept, creating other classes of funds, as it may deem proper, and require the scrip to be issued against the same and registered accordingly."

"859. The commissioners court shall have power by an order to that effect to transfer the money in hand from one fund to another, as in its judgment is deemed necessary and proper, except that the funds that belong to class first shall never diverted from the payment of the claims to which the same are appropriated by article 857, unless there is an excess of such funds."

We presume that the action of the Commissioners Court in dividing up the third class of funds was supposed to be authorized by article 858. The language of article 857, requiring the three named classes of funds to be kept, is mandatory, and the provision of article 858 authorizes the creation of "other" classes. The two provisions do not conflict, and the latter does not necessarily modify or control the other; for provisions ·may be found in the laws of this State for the raising of funds for special purposes, which would not be embraced in the classification re-

quired by the statute, but the keeping of which could be regulated by the court under article 858.

But, as we have before pointed out, the petition does not set up the facts developed by the evidence, and present the question in such a way as to require that we go so far as to hold that the division of the general fund was unauthorized. No remedial process is authorized under the pleadings to correct it, and hence we need go no further than to determine whether or not plaintiffs' rights against the county have been so denied as to entitle them to sue and recover judgment. If it be conceded that article 858 so far modifies article 857 as to authorize the creation of other classes of funds out of those required by the latter, it can not be allowed that the authority to do so can be so used as to destroy the right of holders of registered claims, under article 856, to have their claims paid out of the appropriate fund in the order of registration. This is an imperative requirement which imposes a duty upon the county and confers a right upon its creditors, and there is nothing in the other provisions to qualify either. Now the evidence shows that, by the device adopted, this right has been denied to plaintiffs, and claims junior in date to theirs have been and are being paid out of the funds which the statute plainly says "shall be appropriated to the payment of all claims registered in third class." Article 857. This being true, it necessarily follows that plaintiffs' claims were not paid when they should have been paid, and since by the action taken they are required to look alone to a fund which is insufficient, instead of the whole of the fund designated by the statute, there is a virtual refusal to pay. These facts, we think, give rise to a cause of action against the county. The petition shows the existence of the obligation to pay, a demand and refusal, and is, we think, sufficient to sustain a judgment upon facts which are equivalent, as we have held, to a demand and refusal. If the allegations as to demand and refusal should have been more specific, the exceptions urged did not point out the particular defect; and as the court, after the trial amendment was filed which in one particular at least was intended to amend the allegations against the county, heard the evidence and decided upon the merits, we think the proper action for us to take is to reverse the judgment and render judgment in favor of appellants against the county for the amount of the claims sued upon, and all costs, except those of the other defendants, and in favor of the other defendants for their costs. The part of the judgment below requiring change in the registration and numbering of the warrants is undisturbed, as it is not complained of.

*Reversed and rendered.*

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.